USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8/31/16

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

CMS INVESTMENT HOLDINGS, LLC,

                      Petitioner,

       -against-

LAWRENCE E. CASTLE, CAREN J. CASTLE,

JR. LEO C. STAWIARSKI, LEC HOLDINGS.

L.C.C., and LCS COLORADO HOLDINGS,

L.L.C.,

                      Respondents.

---

14-Cv-9381 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

    CMS Investment Holdings, LLC has petitioned the Court pursuant to 9 U.S.C. § 4 for an order compelling respondents Lawrence E. Castle, Caren J. Castle, Leo C. Stawiarski, Jr., LEC Holdings, LLC, and LCS Colorado Holdings, LLC, to arbitrate a contractual dispute. For the reasons that follow, the petition to compel is granted as to the corporate respondents

LEC and LCS and denied as to the individual respondents Lawrence Castle, Caren Castle, and Leo Stawiarski.

## I.  BACKGROUND

Petitioner and respondents entered into a Securities Purchase Agreement ("SPA") as of August 28, 2007, by which CMS purchased certain securities from respondents. (Pet. to Compel Arbitration (hereinafter "Pet.") ¶¶ 1, 14.) Lawrence and Caren Castle are members of LEC, and Lawrence signed the SPA on LEC's behalf. (*Id.* ¶ 7.) Stawiarski—a member of LCS— signed the SPA on LCS's behalf. (*Id.* ¶ 6.) LEC and LCS agreed to all provisions of the SPA. (Ex. B. to Pet. at 1.) The SPA's opening paragraph states that the Castles and Stawiarski, who signed the SPA as individuals, had "entered into" the SPA "for purposes of Section 6.4 and Article VII." (*Id.*) Section 6.4 provides non-competition and non-solicitation provisions, while Article VII concerns indemnification. (*Id.* at 39-48.)

A totally separate section of the SPA—section 8.7—contains an arbitration clause, which provides as follows:

> Except as otherwise expressly provided herein, any dispute, claim
> or controversy directly or indirectly based upon, arising out of or

2

> relating to this Agreement or the transactions contemplated hereby, or the breach or alleged breach hereof or thereof, whether based on contract, tort or any other theory, shall be submitted for resolution by final and binding arbitration . . . . The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures . . . .

(Ex. B to Pet. at 51.) Section 8.7's arbitration clause falls within Article VIII, which is titled "Miscellaneous." (*Id.* at 48, 51.)

On the same day that the parties signed the SPA, Stawiarski and LCS entered into a Non-Competition Agreement with CMS that modified the geographic scope of the SPA's section 6.4 as to Stawiarski and LCS. (Pet. ¶ 16 n.2.; Ex. C to Pet.) Also on that day, CMS, the Castles, and Stawiarski entered into a written "Side Agreement," which outlines additional rights of CMS in connection with the transactions between the parties. (Pet. ¶ 17; Ex. D to Pet.) Neither the Non-Competition Agreement nor the Side Agreement includes an arbitration clause, and neither agreement refers to the SPA's arbitration clause in any way.

In May 2013—almost six years after the parties entered into the SPA—CMS delivered to JAMS a demand for arbitration. (Pet. ¶ 20.) The demand alleges that respondents breached the SPA, the Side Agreement, and the Non-Competition Agreement, and also committed fraud. (Ex. A to Pet. at 10-11.) Respondents have refused to arbitrate the dispute and oppose CMS's petition.

## II. DISCUSSION

### A. Legal Standard

Section 4 of the Federal Arbitration Act provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Generally, "the role of courts is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." *Jacobs v. USA Track & Field*, 374 F.3d 85, 88 (2d Cir. 2004) (quotation marks and citation omitted).

When considering a petition to compel arbitration, "the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "Allegations related to the question of whether the parties formed a valid arbitration agreement . . . are evaluated to determine whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012).

### B.   The Castles and Stawiarski did not agree to the SPA's arbitration clause

The Castles and Stawiarski—the individual respondents—contend that they cannot be compelled to arbitrate because (1) they did not agree to the SPA's arbitration clause and (2) neither the Side Agreement nor the Non-Competition Agreement contain arbitration provisions of their own. CMS responds that only the arbitrator, not the Court, can decide whether the individual respondents agreed to arbitrate. In the alternative, CMS contends that the individual respondents are, in fact, bound to the SPA's arbitration clause.

At the outset, it is clear that the Court—not the arbitrator—must decide whether the individual respondents bound themselves to arbitrate. CMS contends that the Court cannot decide this issue because the SPA expressly incorporates JAMS arbitration rules and those rules vest in the arbitrator the authority to determine whether the individual respondents consented to arbitration. *See* JAMS Comprehensive Arb. R. & P. 11(b) (effective July 1, 2014).[1] Here, however, the individual respondents contend that they never agreed to arbitrate *any* question. If so, they never agreed to adopt the JAMS Rules, either. As such, before the Court may compel arbitration pursuant to the JAMS rules, it must itself address whether the Castles or Stawiarski ever consented to any arbitration at all. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-47 (1995); *John Hancock Life Ins. v. Wilson*, 254 F.3d 48, 53, 57 (2d Cir. 2001).

Arbitration, of course, is a "'matter of contract,'" and "'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (quoting

---

[1] The parties do not address which version of the JAMS Rules governs the SPA. Although the Court cites to the current version, the version that was in effect when the parties signed the SPA in 2007 does not differ in any material respect.

*Transit Mix Concrete Corp. v. Local Union No. 282*, 809 F.2d 963, 967 (2d Cir. 1987)). Although the Federal Arbitration Act imposes a general presumption in favor of arbitration, that presumption "does not apply to disputes concerning whether an agreement to arbitrate has been made." *Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011). In deciding whether the parties entered into an arbitration agreement, "courts should generally apply state-law principles that govern the formation of contracts." *Id.* (quoting *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48 (2d Cir. 2000)).

The Castles and Stawiarski signed the SPA, the Side Agreement, and the Non-Competition Agreement on their own behalves. As noted above, neither of the latter two agreements contain arbitration clauses nor do they reference or incorporate the SPA's arbitration clause. (*See* Exs. C & D. to Pet.) The SPA itself, however, contains a broad arbitration clause in Article VIII, section 8.7. (Ex. B to Pet. at 51.)

But the SPA's language makes manifest that none of the individual respondents bound themselves to Article VIII—entitled "Miscellaneous"—or its section 8.7—entitled "Arbitration." Indeed, the SPA states in its very

first paragraph that "This SECURITIES PURCHASE AGREEMENT . . . is entered into . . . , by and among [various entities] . . . , and, *for purposes of Section 6.4 and Article VII below*, each of Lawrence E. Castle, Caren J. Castle, . . . , [and] Leo C. Stawiarski, Jr."[2] (Ex. B to Pet. at 1 (parentheticals omitted) (emphasis added).) Thus, that clause of the contract expressly limits the sections to which the Castles and Stawiarski bound themselves. Neither section 6.4 nor Article VII contains an arbitration clause or states it incorporates the arbitration clause found in Article VIII, section 8.7. Nor has CMS articulated any basis on which the Court could conclude that arbitration is necessary to effectuate section 6.4, entitled "Non-Competition, Non-Solicitation and Confidentiality," or Article VII, "Indemnification." (Ex. B. to Pet. at 39, 42.) Thus, the SPA fails to evince an agreement between

---

[2] In addition to the individuals—the Castles and Stawiarski—LCS Colorado Holdings, LLC, is also included here. At first glance, that suggests that that entity, too, joined the SPA "for purposes of Section 6.4 and Article VII below." But no party—not even LCS itself—argues that LCS also joined the SPA only "for purposes of Section 6.4 and Article VII." Perhaps this is so because LCS is listed earlier in that same clause as one of the entities—like LEC—that joined the full SPA. Indeed, LCS's joint brief with Stawiarski argues only that Stawiarski—not Stawiarski and LCS—declined to agree to the SPA's arbitration clause. (*See* Defs.' Leo C. Stawiarski, Jr.'s and LCS Colorado Holdings, LLC's Mem. of Law in Opp. to Pl.'s Pet. to Compel Arbitration at 17-19, Dkt. No. 24.; *accord* Mem. in Supp. of Pet. to Compel Arbitration at 2, 3 Dkt. No. 2.) As such, the Court does not construe the "for purpose of" clause to limit LCS's assent to the SPA as it does for the Castles and Stawiarski; the parties do not disagree.

petitioner and the individual respondents to arbitrate *any* dispute. *See VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.,* 717 F.3d 322, 327 (2d Cir. 2013). To conclude otherwise would impermissibly render the SPA's limiting clause meaningless. *See, e.g., Olin Corp. v. Am. Home Assurance Co.,* 704 F.3d 89, 99 (2d Cir. 2012); *Neopharm Ltd. v. Wyeth-Ayerst Int'l LLC,* ___ F. Supp. 3d ___, 2016 WL 1076931, at *5 (S.D.N.Y. March 18, 2016).

In *Zimring v. Coinmach Corporation,* No. 00-cv-8111, 2000 WL 1855115 (S.D.N.Y. Dec. 19, 2000), as here, the officer of a company signed an asset purchase agreement both as a representative of his company and in his individual capacity. *Id.* at *1. Under the signature block where the officer signed as an individual, he inserted a footnote stating that he was "'[s]igning only for purposes of Section 11.3 and Article IX hereof.'" *Id.* (alteration in original). The asset purchase agreement set forth an arbitration clause in a separate section. *Id.* Ultimately, the *Zimring* court held that the officer could not be compelled as an individual to arbitrate because he "limited his individual signature to two portions of the [agreement], neither of which encompassed the arbitration clause." *Id.* at *2. The court also

rejected the argument that applying the arbitration clause to the officer was necessary to give effect to the portions of the agreement that he did sign. *Id.* at \*3; *accord VRG Linhas Aéreas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, No. 11-cv-0198, 2014 WL 4928929, at \*2 (S.D.N.Y. Oct. 2, 2014), *aff'd* 605 F. App'x 59 (2d Cir. 2015).

CMS's attempts to distinguish *Zimring* are not persuasive. First, CMS contends that here—unlike in *Zimring*—"the very first clause of the very first sentence of the [SPA's] very first paragraph" states that the individual respondents "'entered into' the entire SPA." (Reply Br. at 5 (quoting Ex. B to Pet. at 1); *see also id.* at 6-7.) But CMS's quotation is incomplete and materially misleading. The SPA states, awkwardly but unambiguously, that it "is entered into . . .by . . . , *for purposes of <u>Section 6.4</u> and <u>Article VII</u> below*, each of Lawrence E. Castle, Caren J. Castle, . . . , Leo C. Stawiarski, Jr. . . . ." (Ex. B to Pet. at 1 (emphasis added).) The SPA most certainly does not state that the individual respondents "entered into" the "entire SPA," as CMS contends.

Second, CMS contends that the language here is not nearly as emphatic as that in *Zimring*. There, the individual officer wrote on the contract that he

signed "*only*" two sections of the agreement, whereas the relevant clause in

the SPA lacks the word "only." But the analysis in *Zimring* did not depend

on the presence of the word "only." Instead, that word was sufficient—not

required—to demonstrate the officer's intent to limit his contractual

obligations to the two relevant sections. The SPA's language is analogous,

even if less emphatic.

### C.  The individual respondents are not estopped from avoiding arbitration

CMS contends in the alternative that even if the Castles and Stawiarski

never agreed to the SPA's arbitration provision, they are estopped from

avoiding arbitration because they directly benefited from the SPA. "Under

the direct benefits theory of estoppel, a nonsignatory may be compelled to

arbitrate where the nonsignatory 'knowingly exploits' the benefits of an

agreement containing an arbitration clause, and receives benefits flowing

directly from the agreement." *Belzberg v. Verus Invs. Holdings Inc.*, 21 N.Y.3d

626, 631 (2013). Although the Castles and Stawiarski clearly benefitted from

the SPA, Stawiarski argues that estoppel does not apply when a party

purposefully opts out of an arbitration provision.

*Zimring* again supports his argument. That court held that the corporate officer who had signed the two provisions of the asset purchase agreement only could not be estopped from refusing arbitration:

> Zimring's position is not merely that of a non-signatory receiving a direct benefit from the [contract], he is an *intentional* non-signatory. Zimring signed the [contract] on behalf of his company with full knowledge of the arbitration provision. With that knowledge, he expressly limited his signature in such a way so that he did not agree to arbitrate.

*Zimring*, 2000 WL 1855115, at *4. As with the corporate officer in *Zimring*, the Castles and Stawiarski—with knowledge of the SPA's arbitration clause—signed the full SPA as representatives of their LLCs but signed on their own behalves simply "for purposes of <u>Section 6.4</u> and <u>Article VII</u>." They were therefore intentional non-signatories of the arbitration clause and cannot be estopped from avoiding arbitration. *But see All Metro Health Care Servs., Inc. v. Edwards*, 25 Misc.3d 863 (S. Ct. N.Y. Co. 2009).

In sum, CMS's petition must be denied as to the Castles and Stawiarski. Those three never agreed to arbitrate any relevant disputes. And as

intentional non-signatories to the arbitration agreement, they cannot be estopped from avoiding arbitration.[3]

## D. The arbitrator must decide whether CMS has waived its right to arbitration through its litigation conduct.

Unlike the individual respondents, LEC and LCS unquestionably joined the SPA's arbitration provision. They nonetheless oppose CMS's petition on the ground that CMS waived its contractual right to arbitrate by initiating three separate lawsuits in Colorado and Delaware in 2014.

The parties again dispute whether the Court or the arbitrator decides in the first instance if CMS's prior litigation waived its right to arbitrate. *Compare Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 14-15 (1st Cir. 2005), *with Nat'l Am. Ins. Co. v. Transam. Occidental Life Ins. Co.*, 328 F.3d 462, 466 (8th Cir. 2003). Most courts presume that courts—not arbitrators—decide issues of arbitrability including questions of whether a party has waived

---

[3] CMS also urges in a footnote that the Castles and Stawiarski are estopped from avoiding arbitration under the "alter ego" theory. *See Telenor Mobile Commc'ns AS v. Storm LLC*, 524 F. Supp. 2d 332, 366 (S.D.N.Y. 2007), *aff'd*, 584 F.3d 396 (2d Cir. 2009). However, the record does not support a finding that any of the individual respondents operated as alter egos of the corporate respondents.

arbitration by pursuing related litigation. *See LG Elecs., Inc. v. Wi-LAN USA, Inc.*, No. 13-cv-2237, 2014 WL 3610796, at *3 (S.D.N.Y. July 21, 2014); *Apple & Eve, LLC v. Yantai N. Andre Juice Co.*, 610 F. Supp. 2d 226, 230-31 (E.D.N.Y. 2009) (collecting cases). Nonetheless, that presumption may always be overcome by "'clear and unmistakable evidence'" that the parties intended to shift this decisionmaking authority to the arbitrator. *See, e.g., Marie*, 402 F.3d at 14 (quoting *First Options*, 514 U.S. at 944 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). Here, precedent dictates that the parties did, in fact, clearly and unmistakably refer the waiver issue to the arbitrator, so the Court must compel arbitration on that basis.

The U.S. Court of Appeals for the Second Circuit addressed a similar issue in *Republic of Ecuador v. Chevron Corporation*, 638 F.3d 384 (2d Cir. 2011), in which Ecuador and a group of its citizens petitioned to stay an arbitration that Chevron had commenced. *Id.* at 390. The citizens had previously sued Chevron in the Southern District of New York for environmental damages that Chevron allegedly caused in Ecuador. *Id.* at 388-89. But the district court dismissed the lawsuit after Chevron agreed to litigate in Lago Agrio,

14

Ecuador. *Id.* at 390. In 2009, however, Chevron initiated arbitration against Ecuador pursuant to Ecuador's bilateral investment treaty with the United States, claiming that Ecuador had improperly interfered in the Lago Agrio litigation. *Id.* For their part, the petitioners argued that Chevron had waived its right to arbitrate by previously agreeing to litigate the underlying case in Ecuador. *Id.* at 391-92. The parties disagreed whether the court or an arbitrator was the proper authority to address the petitioner's contentions.

The Second Circuit assumed that petitioner's waiver objection was presumptively for the court to decide but nonetheless found that the language of the governing arbitration provision rebutted that hypothetical presumption. That agreement adopted the UNCITRAL arbitration rules, and one of those rules stated that the arbitrator "shall have the power to rule on . . . objections with respect to the existence or *validity* of the . . . arbitration agreement." *Id.* at 394 (emphasis added). According to the court, "Ecuador's waiver and estoppel claims go to the validity of the arbitration agreement." *Id.* As such, the UNICTRAL rules provided "clear and unmistakable evidence" that the parties agreed that petitioner's waiver objection would "be decided by the arbitral panel in the first instance." *Id.*

Here, the SPA's arbitration agreement incorporates analogous rules; the SPA therefore also unambiguously refers respondents' waiver argument to the arbitrator. (Ex. B to Pet. at 51.) The JAMS rules incorporated in section 8.7 state that disputes concerning the arbitration agreement's "validity . . . shall be submitted to and ruled on by the Arbitrator." JAMS Comprehensive Arb. R. & P. 11(b) (effective July 1, 2014). As in *Chevron*, an objection to arbitrate on waiver grounds goes "to the validity of the arbitration agreement." 638 F.3d at 394. Therefore, the parties clearly and unmistakably submitted to the arbitrator's authority the question of whether CMS waived its right to arbitrate by engaging in prior litigation. *See id.* at 394-95. *See also Contec Corp. v. Remote Sols. Co.*, 398 F.3d 205, 208-09 (2d Cir. 2005); *Murray v. UBS Sec., LLC*, No. 12-cv-5914, 2014 WL 285093, at *13-14 (S.D.N.Y. Jan. 27, 2014).

Respondents, for their part, contend that the waiver at issue in *Chevron* is distinguishable from that present here. That is true. The waiver claimed there was based on Chevron's prior representation to the district court that it would submit to litigation in Ecuador. Here, respondents claim that CMS waived its right to arbitrate by attempting to litigate the same issues in

judicial fora. But the Court can discern no relevant difference between these two types of waivers. The waiver at issue in this action does not go to the enduring "validity" of the arbitration agreement any less than the waiver addressed in *Chevron*.

Thus, the SPA's incorporation of the JAMS rules "clear[ly] and unmistakabl[y]" evidences the parties' intent to submit the waiver issue to the arbitrator. *Chevron*, 638 F.3d at 394. The Court therefore grants the petition to compel arbitration as to the corporate respondents.

## III. CONCLUSION

The petition to compel arbitration is granted in part and denied in part. The petition is denied as to Lawrence Castle, Caron Castle, and Leo Stawiarski because none of those individuals agreed to arbitrate their disputes. The petition is granted as to LEC Holdings, LLC, and LCS Colorado Holdings, LLC.

Dated:  New York, New York
        August 31, 2016

SO ORDERED:

Sidney H. Stein, U.S.D.J.